# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE KINMAN, | ) | |
| | ) | No. 17-cv-3079 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Valerie Kinman ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration denying her Social Security disability benefits under Title II and Supplemental Security Income benefits under Title XVI of the Social Security Act. Plaintiff has filed a motion for summary judgment [15] and the Commissioner has filed a cross-motion for summary judgment [23]. After reviewing the record, the court grants the Plaintiff's motion, and denies the Commissioner's motion. The decision of the Administrative Law Judge ("ALJ") is reversed, and the case is remanded for further proceedings consistent with this opinion.

Plaintiff suffers from several severe impairments, including anxiety and depression.[1] (R. 16.) At her hearing before an Administrative Law Judge ("ALJ"), Plaintiff testified that she worked overnight at a 7-Eleven store in January 2013 for two nights, but had to quit because she was frightened by the customers and she "didn't want to be in fear of my safety to be working alone." (R. 43.) Plaintiff also submitted a Function Report to the Bureau of Disability Determination Services. In that report, Plaintiff stated that she was "tired and beat down," could not focus well, and suffered from anxiety. (R. 292.) She described daily crying spells of one or

---

[1] The Plaintiff also has physical impairments, but they are not pertinent to this opinion.

two hours, and she had very little energy and felt sad. (R. 293.) She did not do any house work or yard work, made one meal a day (typically sandwiches, soups, or frozen dinners), left the house only twice per week because she felt like hiding from the world, and would go shopping approximately twice per month for toiletries and groceries. (R. 294-95.) She reported her hobbies as watching television, reading, and doing online research, and that she would go to church, a community support center, or visit with her social worker once or twice per month. (R. 296.)

Plaintiff also had a treating relationship with psychiatrist Dr. Laurie Carrier, M.D., who completed a Mental Medical Source Statement in this case. (R. 584.) Dr. Carrier diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. (R.584.) Dr. Carrier opined that Plaintiff's conditions would cause her to be unable to meet competitive standards in the following areas: maintaining attention for a two-hour segment; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; and dealing with normal work stress. (R. 586.) Dr. Carrier also found that Plaintiff had no useful ability to maintain regular attendance and be punctual. (R. 586.) Dr. Carrier further noted that Plaintiff would have poor focus, concentration, and ability to commit to a regular schedule, and that Plaintiff often reacted to even minimally stressful situations by "losing [her] temper, overreacting, [and] becoming verbally hostile or upset." (R. 587.) Plaintiff began treating with Dr. Carrier in June of 2013; at her initial intake, Plaintiff explained that she had "not had an adequate treatment of depression 'because [she] could not afford to see anybody.'" (R. 405.)

On May 6, 2013, Plaintiff filed an application for the Title II disability insurance benefits and Title XVI supplemental security income. (R. 14.) Her application was denied initially on September 5, 2013, and upon reconsideration on March 21, 2014. (R. 14.) Plaintiff requested a

hearing before an ALJ, which was held on September 10, 2015. (*Id.*) On January 6, 2016, ALJ Bill Laskaris issued an opinion finding that Plaintiff was not disabled. (R. 14-28.) The ALJ went through the five-step sequential evaluation process to determine whether Plaintiff was disabled. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 15, 2012; at step two, the ALJ found that Plaintiff has severe impairments in the form of depression, anxiety, degenerative joint disease of the knees, hypertension, and short leg syndrome; at step three, the ALJ held that Plaintiff did not have an impairment or combination of impairments that meets or equals any impairment found in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; before step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with several limitations that are not pertinent to the discussion below; at step four, the ALJ concluded that Plaintiff was incapable of performing her past relevant work; at step five, the ALJ found that jobs in significant numbers exist in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC. (R. 14-28.)

In reaching this decision, the ALJ found "the claimant's allegations regarding the severity of her allegations to be less than credible." (R. 26.) Regarding the Plaintiff's mental impairments, the ALJ analyzed her credibility as follows:

> The claimant also alleged that she had a twenty-year history of anxiety and depression that made it difficult for her to maintain her attention and concentration. However, there is no indication in the record that the claimant sought or received any mental health treatment until 2013 and the exams performed by Dr. Carrier in 2014 showed no significant cognitive abnormalities. The claimant's work history does not support the severity of the claimant's allegations. The claimant testified that she was able to work the night shift at a convenience store for several days in 2013 and in April 2013, the clamant reported that she had been working as a bartender in late 2012 or early 2013, after the alleged onset date. The

3

> claimant's activities of daily living do not support the severity of claimant's allegations. While the claimant reported disabling symptoms from her mental and physical impairments, she also reported that she was able to shop in stores prepare basic meals and care for her personal hygiene and complete research on the internet. I find the claimant's statements do not support any additional restrictions in her residual functional capacity.

(R. 26-27) (internal citations omitted).

This analysis is patently erroneous in several ways that require remand. *See e.g.*, *Herrold v. Colvin*, 2016 WL 1660495, at *9 (N.D. Ill. Apr. 27, 2016) ("The court will not overturn an ALJ's credibility determination unless it is 'patently wrong'"). First, the ALJ's reliance on Plaintiff's lack of mental health treatment history was error. Social Security Regulation 97-7p, which covers credibility determinations, states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," including the fact that the "individual may be unable to afford treatment and may not have access to free or low-cost medical services." At her initial psychiatric treatment appointment, Plaintiff specifically stated that she had not sought mental health services in the past because she had been unable to afford to do so, and that was specifically mentioned in the medical record. Nonetheless, the ALJ found that Plaintiff's relatively short treatment history undermined the credibility of her allegations without considering the possibility that it was the result of Plaintiff's economic circumstances. This is in contradiction to the mandate of the Social Security Regulation cited above, and requires remand.

Second, the ALJ found that the Plaintiff's work history suggested she was not disabled, relying on her two-day employment in 2013, and a bartending job that does not appear anywhere in the record. As for the job as an overnight clerk at a convenience store, the Plaintiff testified that

4

she held that job for a few days before quitting because the customers scared her and made her fear for her safety. For a person whose severe impairments include an anxiety disorder, the fact that Plaintiff had to quit a job after two days because the customers made her anxious would seem to support the Plaintiff's allegations that her severe impairments prevent her from working, rather than undermining them. Additionally, the ability to work sporadically and for less than full time is "a far cry from full-time work day-in and day-out." *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (holding that ALJ's credibility determination was flawed because ALJ relied on plaintiff occasionally working a six-hour day). The ALJ erred by relying on Plaintiff's aborted attempt to work as a convenience store clerk for two days to find that her allegations were not credible. Regarding the bartending, the ALJ appears to have made a logical leap that is not supported by the record. The portion of the record cited by the ALJ says "4 months ago banged left hand while tending bar." (R. 363.) However, there is no indication in Plaintiff's earning reports that she made any money as a bartender, and the ALJ did not ask her about any bartending jobs at the hearing. The same medical record cited by the ALJ also notes that Plaintiff has fifteen drinks per week. (R. 364.) One can be "tending bar" in many non-employment situations, including making drinks for family members or friends. Simply put, there is a difference between tending bar and working as a bartender. The ALJ assumed that "while tending bar" necessarily meant that Plaintiff worked as a bartender, but there is no support for that contention anywhere in the record, and the Court finds that the ALJ improperly relied on this potentially non-existent work history to find that Plaintiff's allegations were not credible.

Finally, the ALJ improperly leaned on the Plaintiff's ability to perform some meager household chores and basic personal maintenance as proof that her description of her symptoms was not credible. The Seventh Circuit has repeatedly warned against such reasoning, calling it "naïve," and noting that chores have flexibility in scheduling and are not held to a minimum

5

performance standard, unlike employment. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (quoting *Hughes v. Astrue*, 705 F.3d 267, 278 (7th Cir. 2013)); *see also*, *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("we have repeatedly warned against equating activities of daily living with those of a full-time job"). The Court must reject the ALJ's opinion on this basis as well.[2]

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with the opinion.

**ENTERED:** 6/28/2018

Susan E. Cox
United States Magistrate Judge

---

[2] Because the Court remands on the basis articulated above, it does not reach the other issues raised by the Plaintiff on this appeal.